**UNITED STATES of America,**

v.

**Samuel RAPPAPORT, Appellant in No. 13388,**

**Lennore (also known as Lynn) Rappaport, Appellant in No. 13475,**

**Eli Penn, Appellant in No. 13476.**

**Nos. 13388, 13475, 13476.**

United States Court of Appeals Third Circuit.

Argued April 4, 1961.

Decided June 5, 1961.

Donald J. Goldberg, Philadelphia, Pa. (Garfield W. Levy, Philadelphia, Pa., on the brief), for appellants.

Joseph J. Zapitz, Asst. U. S. Atty., Philadelphia, Pa. (Walter E. Alessandroni, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This mail fraud case was tried under an indictment containing a conspiracy count as well as several substantive counts alleging fraud through the mailing of fictitious credit references in a scheme to obtain merchandise without ever paying for it. Samuel Rappaport, his wife Lennore Rappaport, and Eli Penn have taken these appeals from their convictions on the conspiracy count and certain substantive counts. The sentences on the several counts were made to run concurrently and the grounds of appeal are such that it will suffice to examine the issues in the context of the conspiracy count.

It is charged in the indictment that the conspiracy began about July 1, 1956, and continued until February 1958. The scheme is alleged to have involved leasing vacant premises and using these addresses, coupled with fictitious business names, to identify non-existent credit references. In the meantime, retail establishments were opened under the nominal proprietorship of Silvio Petti and Harry Gelman, conspirators who are not parties to this appeal. The fictitious references were then sent to suppliers of goods and merchandise in an effort to get credit for the newly opened establishments. When prospective suppliers made inquiry by mail to the fictitious references, the conspirators themselves answered the letters by mail, giving false assurances in the names of the fictitious references that the prospective purchasers enjoyed good credit standing. This fraud resulted in the sale and delivery of large amounts of merchandise, none of which was paid for. The evidence established overwhelmingly and without contradiction that this fraudulent scheme was devised and carried out with the use of the mails as an integral and essential feature.

Penn's defense was that he was an innocent employee of Petti, one of the named conspirators who was the nominal proprietor of one of the establishments which obtained merchandise by fraud. Rappaport's defense was that he was merely an innocent purchaser of some of the merchandise from those who were subsequently shown to have obtained it by fraud of which he was unaware. These contentions were contradicted by impressive evidence that Rappaport and Penn were principal participants, indeed the moving spirits, in the entire scheme.

It was shown that Rappaport was a merchant, experienced in retail selling.

In 1956 he had hired Petti as a truck driver. In 1957, according to Petti's own testimony, Rappaport set Petti up in business under the name "Silvio Distributors". Rappaport paid Petti's original business costs, including store rental. Though ostensibly Petti became an independent business man, Rappaport continued to pay him a salary and promised him a bonus at the end of the year. Admittedly, much of the merchandise purchased in the name of Silvio Distributors was ultimately transferred to Rappaport's own place of business and there sold at auction. Penn was the brother-in-law of Rappaport and a business associate. He personally participated in the acquisition of several vacant premises which were used thereafter as addresses for fictitious credit references. He was seen collecting mail at one of these vacant premises. He instructed Petti on details of operating the Silvio Distributors establishment.

There was evidence of similar conduct by Rappaport and Penn in setting up a second business in the name of Gelman, another conspirator. The same pattern of financing and use of fictitious credit references appeared in connection with Gelman's acquisition of merchandise. Indeed, Petti and Gelman were principal prosecution witnesses and each told a detailed story of a scheme devised and directed by Rappaport and Penn. As has already been indicated, Rappaport and Penn claimed that they acted innocently and that the others were the wrongdoers.

In these circumstances, the fact that Petti was a truck driver without business experience, capital, or any apparent means of financing a new business would have made it most difficult for any jury to credit the testimony of Rappaport and Penn that they were innocently dealing with Petti and were unaware of any fraudulent scheme to obtain credit. Their story was implausible on its face.

In this context we consider the only substantial point made by Penn and Rappaport on this appeal. They complain that a large amount of evidence was introduced over objection showing that in the months immediately preceding the establishment of Silvio Distributors and the Gelman enterprise, Penn himself bought a large amount of merchandise as stock in trade for his own business and thereafter failed to pay for it. It is argued that this evidence had no substantial probative value in establishing the conspiracy charged, yet was prejudicial in showing that the discreditable practice of buying merchandise and failing to pay for it was Penn's characteristic way of doing business. If the other evidence of the prosecution which related directly to the fraud charge had been scanty or weak or if Penn's rebuttal of that direct testimony had been strong, this argument of prejudice would have been substantial. Cf. Erber v. United States, 2 Cir., 1916, 234 F. 221. But the direct evidence of the wrongdoing charged was so strong and the defense on its face so implausible as to show Penn in a much worse light than did the evidence of past irresponsible business behavior to which he objected. In these circumstances we find no substantial likelihood that Penn was injured by the testimony of past business behavior. A fortiori, Rappaport, who was not shown to have defaulted on any bills could not have been injured.

The case is different with respect to Rappaport's wife, Lennore. There is no evidence whatever that she was aware of, much less a party to the "Silvio" and "Gelman" enterprises, or the planning or execution of the false credit reference scheme. On the record her business association was solely with "Lynco", a general merchandising enterprise of her husband. In July 1956 she signed a lease for the building where that business was conducted. For a number of months thereafter she worked in the Lynco store, marking merchandise, operating the cash register, and performing other office operations incidental to this business. All of this activity antedated the establishment of the Silvio and Gelman enterprises. None of it was shown to have been in any way connected with or in anticipation of those future enterprises.

A person can be convicted of guilty participation in a conspiracy on the basis of acts innocent in themselves only if he had guilty knowledge that what he did was in furtherance of the corrupt enterprise charged. United States v. Crimmins, 2 Cir., 1941, 123 F.2d 271; Davidson v. United States, 8 Cir., 1932, 61 F.2d 250. Here it is not even shown that Lennore Rappaport's acts in fact aided the conspiracy, much less that she was aware that her conduct was connected with wrongdoing. Her conviction must have been based on speculation without logical basis in the record and, therefore, cannot stand.

The convictions of Samuel Rappaport and Eli Penn will be affirmed. The conviction of Lennore Rappaport will be reversed.