UNITED STATES of America,
Appellee,

v.

Michael J. PEPE et al.

Appeal of Anthony P. DiGIACOMO.

No. 74–1661.

United States Court of Appeals,
Third Circuit.

Argued Jan. 10, 1975.

Decided Feb. 12, 1975.

Ralph F. Keil, U. S. Atty., Bruce L. Thall, Asst. U. S. Atty., Wilmington, Del., for appellee.

Stuart B. Young, Richard A. Zappa, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for appellant, Anthony P. DiGiacomo.

Before ALDISERT, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

Appellant, Anthony P. DiGiacomo (DiGiacomo), and five others were charged in a two-count indictment with violating 18 U.S.C. § 1955[1] and with conspiring to violate § 1955 under 18 U.S.C. § 371.[2] After Count I (charging the substantive violation of the federal anti-gambling statute under § 1955) was dismissed by the Government,[3] DiGiacomo in a non-jury trial was convicted of Count II (the conspiracy charge) and sentenced.[4] The sole issue on this appeal is whether or not the evidence at trial was sufficient to prove the requisite number of persons to be involved in a gambling operation (five) in order to sustain a conviction of conspiracy to violate § 1955. Inasmuch as we conclude that the evidence only reveals that four (rather than the required five) were to be involved in the gambling operation, we are obliged to reverse DiGiacomo's conviction.

### I.

Count II of the indictment under which DiGiacomo was convicted charged that DiGiacomo and five other named defendants[5] as well as "others to the Grand Jury unknown" conspired to violate § 1955 in that they

would conduct, finance, manage, supervise, direct, and own an illegal gambling business which was in viola-

---

1. Section 1955 in pertinent part provides:

    (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

    (b) As used in this section—

    (1) "illegal gambling business" means a gambling business which—

    (i) is a violation of the law of a State or political subdivision in which it is conducted;

    (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

    (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

    (2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

    (3) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

    *    *    *    *    *    *

    The intent of § 1955 has been frequently stated to be "not to bring all illegal gambling activity within the control of the federal government, but to deal *only* with illegal gambling activities of major proportions." United States v. Bridges, 493 F.2d 918, 922 (5th Cir. 1974) (emphasis supplied). *See also* United States v. Iannelli, 477 F.2d 999, 1002 (3d Cir. 1973), cert. granted, 417 U.S. 907, 94 S.Ct. 2602, 41 L.Ed.2d 211 (1974); United States v. Harris, 460 F.2d 1041, 1046 (5th Cir.), cert. denied, 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130 (1972); 1970 U.S.Code Cong. & Ad. News at 4029.

2. 18 U.S.C. § 371 in pertinent part provides:

    If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

3. Upon approval of the district court, on March 15, 1973 the Government without stated reasons dismissed Count I of the indictment.

4. DiGiacomo, pursuant to 18 U.S.C. § 3651, was sentenced to a custodial term of two years, of which 22 months were suspended. He was also fined $1,000.00.

5. The other defendants named in the indictment were: Michael J. Pepe; Thomas Alfred "Pee Wee" Capodanno; Michael "Spider" Niland; Edward Carucci; and Eugene Papaleo. Capodanno and Papaleo were found not guilty; Pepe pleaded guilty to a violation of Count II; the other defendants were found guilty as charged.

tion of the laws of the State of Delaware, of the receiving, recording, and registering bets and wagers upon the result of trials and contest in violation of Title 11, Delaware Code, Sections 665, 669 and 670A and which involved at least five persons, and conducted, financed, managed, supervised, directed, and owned such business, and which had been in substantially continuous operation for a period in excess of 30 days, and which had grossed in excess of $2,000 in any single day, all in violation of Title 18, United States Code, Section 1955.

Appellant DiGiacomo focuses his attack upon the Government's failure to prove his participation in a conspiracy that, if successful, would meet the requirements of subsection (b)(1)(ii) of § 1955.[6] DiGiacomo claims that the record is devoid of competent proof that at least four other persons were intended or expected to participate in the gambling enterprise.[7] DiGiacomo challenges as clearly erroneous the district court's finding that:

> 19. During that period [end of 1971 to early May of 1972] Mr. DiGiacomo was aware of the participation of at least the following individuals in the Pepe gambling business: himself, Michael Pepe, Mr. Pepe's line source, Edward Carucci and Michael Niland.

DiGiacomo argues that the evidence in the record cannot support his reasonable expectation or anticipation that there existed or would exist a line source (independent of Pepe) who would constitute the "fifth" person to be involved in the gambling business.

## II.

■■■■ At the outset of our analysis, we note that the district court utilized the correct standard in determining whether or not the evidence proved a conspiracy to violate § 1955. In Conclusion of Law No. 5, the district court stated:

> "Where one is charged with conspiracy to violate Section 1955, however, the essence of the offense is an agreement and one cannot be convicted unless there was an agreement to work towards the establishment or maintenance of a gambling business of a kind which, if conducted, would violate Section 1955. *Accordingly, in order to convict a defendant for conspiring to violate Section 1955, it must be proven beyond a reasonable doubt that the defendant wilfully reached a common understanding with one or more of the co-conspirators named in the indictment to work towards the maintenance of an illegal gambling business which he anticipated would have five or more participants. . . .* It is not necessary that the defendant be familiar with the identity of, or all of the activities of, the other participants in the gambling business. *It is necessary, however, that the defendant must have contemplated that the overall venture which was the object of the conspiracy would have at least five participants. . . .* " (emphasis supplied)

*See also* United States v. Athanas, 362 F.Supp. 411, 414 (E.D.Mo.1973). In order to sustain a conviction for a conspiracy to violate § 1955, the Government, among other things, must prove beyond a reasonable doubt, that the particular defendant reached an *agreement with one or more others* to conduct an illegal gambling business which reasonably anticipated the involvement of *five or more persons.* Thus the proof that is required is that at least two persons (the number *required* for a violation of § 371) conspired to "conduct" an unlawful gambling operation as defined in the statute. The statute, in turn, sets forth three ele-

---

**6.** Apparently DiGiacomo does not challenge the Government's proofs establishing the other elements of a violation of § 1955. *See* 18 U.S.C. § 1955(b)(1)(i) & (iii); note 1, *supra.*

**7.** A mere placing of a bet does not make a person a participant in a gambling enterprise for purposes of satisfying the "five or more persons" requirement of § 1955. *E. g.,* United States v. Riehl, 460 F.2d 454, 459 (3d Cir. 1972).

ments of an illegal gambling business. One such element is the participation of a minimum of five persons. 18 U.S.C. § 1955(b)(1)(ii).

United States v. Iannelli, 477 F.2d 999 (3d Cir. 1973), cert. granted, 417 U.S. 907, 94 S.Ct. 2602, 41 L.Ed.2d 211 (1974), which is heavily relied upon by the Government, is not contrary to the principle announced here. *Iannelli* holds that where the Government has proved the three jurisdictional elements of § 1955 to exist *in fact,* then a defendant may be convicted for a *substantive violation* of that statute although he may not have had knowledge that the number of participants in the gambling business were five or more. *Id.* at 1002. Neither United States v. Bobo, 477 F.2d 974 (4th Cir. 1973) nor United States v. Stanley, Crim.No. 27541 (N.D.Ga.1973) (also cited by the Government) requires a different result.

█ Requiring proof of knowledge for a conspiracy conviction (to commit an offense) while not requiring proof of knowledge to convict for the substantive offense itself, is not unusual in our jurisprudence. The Second Circuit Court of Appeals, in reversing a conviction for conspiring to assault federal agents where the appellants were unaware that the victims were federal agents at the time of the assault, said:

> Absent legislative change, the recognition that specific knowledge of factual circumstances conferring federal jurisdiction is unnecessary to proof of the substantive offense under such statutes but is required for proof of conspiracy remains very much the law in this circuit and, apparently, elsewhere as well. (footnote omitted)

United States v. Alsondo, 486 F.2d 1339, 1343 (2d Cir. 1973), cert. granted sub nom., United States v. Feola, 416 U.S. 935, 94 S.Ct. 1932, 40 L.Ed.2d 285 (1974). *See* United States v. Crimmins, 123 F.2d 271, 273 (2d Cir. 1941); Developments in the Law—Criminal Conspiracy, 72 Harv. L.Rev. 920, 938 n. 97 (1959); *cf.* United States v. Barrow, 363 F.2d 62 (3d Cir. 1966), cert. denied, 385 U.S. 1001, 87

S.Ct. 703, 17 L.Ed.2d 541 (1967); United States v. Rappaport, 292 F.2d 261 (3d Cir.), cert. denied, 368 U.S. 827, 82 S.Ct. 48, 7 L.Ed.2d 31 (1961). *But see* United States v. Roselli, 432 F.2d 879, 891–92 (9th Cir. 1970), cert. denied, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971). Hence, to convict a defendant of conspiracy to violate § 1955, it is incumbent upon the Government to prove an agreement which contemplates the commission of a crime and that such crime is in fact and law a federal offense. As such, the overall objective of the conspiracy agreed to, must encompass, *inter alia,* an intention or understanding that five or more persons will be involved in an illegal gambling operation.

### III.

█ Under the theory of conspiracy noted above, DiGiacomo argues that the evidence was insufficient to support his conviction of conspiracy to violate § 1955 because it failed to establish that he agreed to engage in a gambling activity which he anticipated, or reasonably should have expected, would include five or more participants. Proof of conspiracy—even if established by circumstantial evidence—must be such as to establish beyond a reasonable doubt the defendant's agreement to a plan to commit a federal substantive offense. *See* United States v. Boyle, 402 F.2d 757 (3d Cir. 1968), cert. denied, 394 U.S. 934, 89 S.Ct. 1207, 22 L.Ed.2d 464 (1969); United States v. Giuliano, 263 F.2d 582, 584 (3d Cir. 1959). Viewing the proofs from the point of view most favorable to the Government, *see* Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we nevertheless find no evidence to establish appellant DiGiacomo's agreement to or participation in a conspiracy to engage in an illegal gambling business as defined in § 1955.

In finding DiGiacomo guilty on the conspiracy count, the district court concluded:

> From the end of 1971 to May of 1972, Anthony DiGiacomo willfully conspired with Edward Carucci, Mi-

chael Niland and Michael Pepe to maintain and further the Pepe sports gambling business knowing that that business had at least five participants and expecting that it would be in substantially continuous operation for at least thirty (30) days.

District Court's Conclusion of Law No. 9. This conclusion was premised on two of the district court's findings: (1) that DiGiacomo was aware that the Pepe sports gambling business had at least five participants:

> During that period, Mr. DiGiacomo was aware of the participation of at least the following individuals in the Pepe gambling business: himself, Michael Pepe, *Mr. Pepe's line source,* Edward Carucci and Michael Niland.

District Court's Specific Finding of Fact No. 19 (emphasis supplied); and (2) that Pepe had a line source:

> Mr. Pepe had an arrangement with an *individual other than one of the named defendants* pursuant to which he received line information for use in his business.

District Court's Specific Finding of Fact No. 3 (emphasis supplied).

After careful examination of the evidence in the record below, we hold that the record is completely devoid of minimum evidentiary support for the district court's Specific Findings of Fact Nos. 3 and 19, and that therefore both findings are clearly erroneous. United States v. Delerme, 457 F.2d 156, 160 (3d Cir. 1972).

Consequently, the necessary predicate is missing for the district court's Conclusion of Law No. 9 and, hence, it can provide no basis for DiGiacomo's conviction.

The evidence reveals that DiGiacomo received his "lines"[8] solely from Pepe, who, during all communications with DiGiacomo said nothing to indicate that he [Pepe] had an independent "line" source. Moreover, there is no other evidence in the record—whether testimonial or circumstantial—to support a finding that Pepe received his lines from an outside source or *should reasonably have been expected to do so.* The Government's expert witness testified in response to a question asking for "the *general outline* of a typical bookmaker and any relationships that individual might have with other individuals" (Tr. at 309) (emphasis supplied) that a bookmaker, in circumstances similar to those of Pepe's, would usually obtain a "line" from some other source. (Tr. at 312, 314). But then the witness testified that other than a telephone reference to a line source in Chester, Pennsylvania, he did not know the source of Pepe's line information. (Tr. at 387–88). Our analysis of the referenced telephone conversation indicates that the conversation was, at best, a discussion of what the "line" was in Chester, rather than a transmission of that "line" to Pepe.[9] The only other reference in the record to the possible source, if any, of Pepe's line information was "an idea" volunteered by a non-partici-

---

**8.** "Betting line" information describes a prediction of the probable outcome of a given contest and reflects the betting odds or point spreads on sporting events used in the making of wagers. It is the margin by which the probable victor is expected to defeat its opponent. *See generally* United States v. Bobo, 477 F.2d 974 (4th Cir. 1973) for a discussion of "lines" on sporting events.

**9.** The pertinent portion of the conversation, which was allegedly between defendants Niland and Pepe, is as follows:

> "Pepe: Maryland and Duke's on Channel 2. Marquette's on now. Yea, they're on. You say West Virginia by 5?
> Niland: Five points, yea.
> Pepe: Um huh.

> Niland: It's the right line so you can use it if you want, it's the line from Chester so (pause).
> Pepe: Um huh.
> Niland: They take big bets on it so its alright.
> Pepe: What was the Marquette game up there?
> Niland: Marquette up there—3½.
> Pepe: What was Duke?
> Niland: Duke was the same.
> Pepe: 4.
> Niland: No, No, No, Duke, oh, Maryland up there was 4½.
> Pepe: Was it?
> Niland: Yep."

Transcription of telephone conversation of February 26, 1972 at 1:50 p. m.

pant in the Pepe sports gambling operation.[10]

Such speculation and generalized theories of line information without evidential basis in the record cannot support a finding that Pepe received information from an outside line source. Moreover, unlike a chain conspiracy in drug cases, compare United States v. Bynum, 485 F.2d 490, 496 (2d Cir. 1973), vacated and remanded on other grounds, 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1974), there is no basis on which DiGiacomo could be said to have anticipated or expected that a line source independent of Michael Pepe must have existed. Indeed, the district court expressly found in its General Finding of Fact No. 3 that while the line source is essential to a bookmaking operation, it is nonetheless possible for a bookmaker to be the source of his own line information:

> . . . It is necessary for a bookmaker to have line information. While it is possible for a bookmaker to fix his own "line," this would be very unusual in an area like Wilmington . . . . (emphasis supplied)

See also Tr. at 438.

■ Although it is not necessary that circumstantial evidence exclude every reasonable hypothesis consistent with innocence to support a conviction of conspiracy, see, e. g., United States v. Blair, 456 F.2d 514, 517 (3d Cir. 1972), the evidence must nevertheless rise above mere speculation and conjecture—it must suffice to prove the elements of a conspiracy beyond a reasonable doubt. See Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); United States v. Chambers, 382 F.2d 910, 913 (6th Cir. 1967). Such an essential quality of certitude to prove the existence or expectation of an outside line source as the fifth person involved in the gambling activity is missing from the evidence adduced at the trial.[11] Absent the necessary evidentiary predicate, we cannot, and will not, presume the "fact" that DiGiacomo entered into an agreement with another anticipating or reasonably expecting five persons would be involved in the gambling operation in which he participated.

Although the activity in which DiGiacomo and his "colleagues" were engaged may be illegal under the laws of Delaware, that activity, under our analysis, does not constitute a federal offense. See, e. g., United States v. Bridges, 493 F.2d 918 (5th Cir. 1974).

■ As we hold the evidence as to appellant DiGiacomo fails to prove that he conspired with others to operate a gambling business with five persons, a violation of federal law is not established and DiGiacomo's conviction must therefore be reversed. As such, we need not consider the other issues raised on this appeal by DiGiacomo.

DiGiacomo's conviction on Count II will be reversed, the sentence vacated, and the case will be remanded to the district court for entry of a judgment of acquittal.

---

10. Defendant Capodanno, described by the district court as an "accommodation bettor" in that he placed bets with Pepe both for himself and his friends, testified as follows:

> "Q. Did you know where Mr. Pepe got his lines from?
> A. I have an idea.
> Q. I would like to have the idea.
> A. I think he was getting them from Pottstown.
> Q. Pennsylvania?
> A. Yes.
> Q. Okay, any particular individual?
> A. Mr. Giangiancomo.
> Q. You know what his first name is?
> A. Anthony."

Tr. at 592–93.

11. The Government urges in its brief that the requisite "fifth" person might be the individual with whom Pepe placed "layoff" bets—that is, a portion of the bets Pepe would receive on a given contest would be bet with another bookmaker in order for Pepe to "balance" his books. The district court, however, found that while it was probable that Pepe "laid off," this fact was not established beyond a reasonable doubt. Specific Finding of Fact No. 4. As such, we will not consider the Government's "fifth" person to be a layoff bookmaker.