

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-30-1994

# United States of America v. Conley, et al.

Precedential or Non-Precedential:

Docket 93-3504

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"United States of America v. Conley, et al." (1994). *1994 Decisions.* Paper 150.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/150

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

No. 93-3504
_____

UNITED STATES OF AMERICA,

<u>Appellant</u>

vs.

JOHN F. "Duffy" CONLEY; WILLIAM C. CURTIN; SHEILA
SMITH; JOHN FRANCIS "Jack" CONLEY; THOMAS "Bud"
MCGRATH; MARK A. ABBOTT; THOMAS ROSSI; WILLIAM
STEINHART; ROBERTA FLEAGLE; ROBIN SPRATT; MONICA C.
KAIL; WILLIAM J. REED; JOANNE T. SMITH; KENNETH "Ron"
GOODWIN; LAWRENCE N. "Neudy" DEMINO, SR.; CHRISTOPHER
"Chris" KAIL; JOSEPH A. DEVITA; FRANK GAROFALO;
THOMAS D. CIOCCO; MICHAEL SUKALY; PHILLIP M. "Mike"
FERRELL; ANESTOS "Naz" RODITES; WILLIAM E. RUSIN
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 91-cr-00178)
_____

Argued
April 26, 1994
Before:  MANSMANN, HUTCHINSON and ROTH, <u>Circuit</u> <u>Judges</u>.

(Filed September 30, 1994)
_____

Paul J. Brysh, Esquire (ARGUED)
Linda L. Kelly, Esquire
Office of the United States Attorney
633 United States Post Office
  & Courthouse
Pittsburgh, PA  15219

   COUNSEL FOR APPELLANT

Anthony M. Mariani, Esquire
36th Floor Grant Building
Pittsburgh, PA  15219

   COUNSEL FOR APPELLEE CURTIN

Ellen M. Viakley, Esquire
436 Seventh Avenue
1550 Koppers Building
Pittsburgh, PA  15219

    COUNSEL FOR APPELLEE SMITH

Alisa N. Carr, Esquire
Laughlin, Difenderfer & Boyle
140 Fort Pitt Commons Building
Pittsburgh, PA  15219

    COUNSEL FOR APPELLEE JOHN F. CONLEY

Caroline M. Roberto, Esquire (ARGUED)
5th Floor, Law & Finance Building
Pittsburgh, PA  15219

    COUNSEL FOR APPELLEE MCGRATH

Lee Markovitz, Esquire
1040 Fifth Avenue
Pittsburgh, PA  15219

    COUNSEL FOR APPELLEE SMITH

Foster A. Stewart, Esquire
Stewart & Associates
1550 Koppers Building
Pittsburgh, PA  15219

    COUNSEL FOR APPELLEE KAIL

John P. Goodrich, Esquire
Goodrich, Micale & Search
436 Boulevard of the Allies
Pittsburgh, PA  15219

    COUNSEL FOR APPELLEE SUKALY

Gary B. Zimmerman, Esquire
312 Boulevard of the Allies
Suite 620
Pittsburgh, PA  15222

    COUNSEL FOR APPELLEE FERRELL

Vincent R. Baginski, Esquire
430 Boulevard of the Allies
Pittsburgh, PA  15219

COUNSEL FOR APPELLEE RODITES

Peter V. Marcoline, Jr., Esquire
1414 Grant Building
Pittsburgh, PA  15219

    COUNSEL FOR APPELLEE RUSIN

Carl M. Janavitz, Esquire
519 Allegheny Building
Pittsburgh, PA  15219

    COUNSEL FOR APPELLEE GAROFALO

Gary Gerson, Esquire
220 Grant Street
Pittsburgh, PA  15219

    COUNSEL FOR APPELLEE JOHN FRANCIS CONLEY
                  _____

                OPINION OF THE COURT
                  _____


MANSMANN,  <u>Circuit</u> <u>Judge</u>.

        The United States Government appeals a pre-trial order
of the district court dismissing, with prejudice, the money
laundering object of a criminal conspiracy count against Thomas
"Bud" McGrath and thirteen other defendants who joined his motion
to dismiss.  This complicated case originally involved a total of
twenty-nine counts against twenty-three defendants who were
alleged to have conducted an illegal gambling business.  The
general question before us is whether the district court erred as
a matter of law when it dismissed the money laundering object of
the conspiracy alleged in Count One of the indictment due to the
district court's perception that double jeopardy concerns are

implicated when both a conspiracy to commit money laundering and the substantive offense of illegal gambling are alleged.

We must decide whether Title 18, United States Code Section 1956(a)(1)(A)(i) proscribes money laundering transactions with the proceeds of an illegal gambling business, in the absence of some other form of specified unlawful activity. Because we find that money laundering with the proceeds of an illegal gambling business is one of the types of specified unlawful activity the money laundering statute proscribes and because we find that Congress did intend to impose a further punishment under § 1956 for using the proceeds of an illegal gambling business to promote that illegal activity, we will vacate the district court's order dismissing the money laundering object of the conspiracy charged in Count One of the indictment and remand this case to the district court for reinstatement of this portion of Count One.

I.

On September 26, 1991, a grand jury sitting in Pittsburgh, Pennsylvania, returned a twenty-nine count indictment charging twenty-three individuals with participation in an illegal gambling business involving video poker machines.[1] The

---

[1]. The twenty-three persons named in the indictment are: John F. "Duffy" Conley, William C. Curtin, Sheila F. Smith, John Francis "Jack" Conley, Thomas "Bud" McGrath, Mark A. Abbott, Thomas Rossi, William Steinhart, Roberta Fleagle, Robin Spratt, Monica C. Kail, William J. Reed, Joanne T. Smith, Kenneth "Ron" Goodwin, Lawrence N. "Neudy" Demino, Sr., Christopher "Chris" Kail, Joseph A. Devita, Frank Garofalo, Thomas D. Ciocco, Michael Sukaly, Phillip M. "Mike" Ferrell, Anestos "Naz" Rodites, and

indictment identified John F. "Duffy" Conley as the central figure in the extensive illegal gambling operation, alleging that Duffy Conley was the owner and operator of Duffy's Vending and/or Three Rivers Coin, which had the primary purpose of facilitating an illegal gambling business through video poker machines.

The indictment also identified the remaining defendants and their roles. William L. Curtin was the general manager of Duffy's Vending, assisting Duffy Conley in daily operations. Sheila Smith was an office manager, accountant and bookkeeper for Duffy Conley, also supervising employees who placed, moved and serviced video poker machines. Jack Conley recorded service calls from locations and facilitated the movement, repair and servicing of video poker machines. Thomas Bud McGrath, Duffy Conley's employee, marketed and secured locations for Duffy Conley's video poker machines. Mark Abbott, another employee of Duffy Conley, also marketed, moved and secured locations for Duffy Conley's video poker machines.[2]

(..continued)
William E. Rusin. Three of the defendants -- William Steinhart, Monica Kail and William Reed -- have pleaded guilty.

[2]. The indictment alleged that certain defendants assisted Duffy Conley by facilitating the placement and use of illegal gambling devices at various locations under their control as follows: Thomas Rossi (Carnegie American Legion), William Steinhart (Carnegie American Legion), Robert Fleagle (Terry's Snack Shop), Robin Spratt (Terry's Snack Shop), Monica Kail (Kail's Coffee Corner), William Reed (Idlewood Inn), Joanne Smith (The Coffee Pot), Kenneth "Ron" Goodwin (The Coffee Shop and Bloomfield Snack Shop), Lawrence "Neudy" Demino, Sr. (The Sunny Farms Deli), and William Rusin (Mugshots and Cruisin II).

The indictment further alleged that Duffy Conley employed Chris Kail, Joseph Devita, Frank Garofalo, Thomas

The indictment originally charged twenty-nine counts against various combinations of these defendants. We set forth in detail the charges and overt acts alleged in Counts One and Two of the indictment because the sufficiency of these counts to charge certain offenses is at issue here.

Count One charged all twenty-three defendants with conspiracy to conduct an illegal gambling business, in violation of Title 18, United States Code, Section 1955, and conspiracy to engage in money laundering to promote the unlawful gambling business in violation of Title 18 United States Code, Section 1956.[3] Specifically, Count One charged that "[i]t was an

(..continued)
Ciocco, Michael Sukaly, Phillip "Mike" Ferrell, Anestos "Naz" Rodites and others known and unknown to the Grand Jury as "collectors" whose duties included visiting machine locations and collecting the proceeds of video poker machine gambling. The indictment also alleged that William Rusin was an "associate" of Duffy Conley, who entrusted Rusin with depositing proceeds of the illegal gambling business into a Pittsburgh National Bank account, the Duffy's Vending Account. For more detail, see the opinion of the district court, United States v. Conley, 833 F. Supp. 1121 (W.D. Pa. 1993).

[3]. The substantive illegal gambling statute provides, in pertinent part:

> (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.
> (b) As used in this section--
> (1) "illegal gambling business" means a gambling business which--
> (i) is a violation of the law of a State or political subdivision in which it is conducted;
> (ii) involves five or more persons who conduct, finance, manage, supervise,

essential part of the illegal gambling business run by John F. `Duffy' Conley that the proceeds of this unlawful activity be collected from the various locations where the video poker machines were in use as illegal gambling devices." (¶18; App. 57). Count One also charged that the collection of such proceeds involved the division of money with persons at the video poker machine locations, the delivery of proceeds to other employees of Conley, and the depositing of money into bank accounts controlled by Conley. (¶ 18, App. 57.) The acts of collecting, dividing, transferring, and depositing the proceeds are all transactions as

(..continued)

> direct, or own all or part of such business; and
>
> (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

Prohibition of illegal gambling businesses, 18 U.S.C. § 1955 (1988).

The substantive money laundering statute provides, in pertinent part:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--
>     (A)(i) with the intent to promote the carrying on of specified unlawful activity
> . . . shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

Laundering of monetary instruments, 18 U.S.C.A. § 1956(a)(1)(A)(i) (Supp. 1993).

defined in Title 18, United States Code, Section 1956(c)(3) ("Laundering of Monetary Instruments").

Count One further charged that Conley conducted financial transactions affecting interstate commerce with the proceeds of illegal gambling with video poker machines "with the intent to promote the carrying on of the specified unlawful activity, illegal gambling with video poker machines. . . ." (¶21(b); App. 59-60). In addition, it stated that Conley used illegal gambling proceeds to purchase more video poker machines and to pay employees of Duffy's Vending/Three Rivers Coin (¶29, 31; App. 65). The overt acts of the conspiracy to launder money included numerous payments to Matrix, an entity used to service the video poker machines. (Indictment ¶33; App. 66.)

Count Two charged the substantive offense of conducting an illegal gambling business in violation of Title 18, United States Code, Section 1955. Count Two alleged that "on or around June of 1984 and continuing to on or around September 1991 . . . defendants . . . did unlawfully and knowingly conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business involving video poker machines. . . ." This illegal gambling business "involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of the business, remained in substantially continuous operation for a period in excess of thirty (30) days and had a gross revenue of more than $2,000 for a single day."[4]

---

[4]. Counts three to five, seven to ten and twelve charged interstate travel to promote an illegal gambling business, in

On May 18, 1992, McGrath filed a motion to dismiss the money laundering object of the conspiracy count, joined by thirteen other defendants.[5] McGrath advanced four legal arguments in support of his motion. First, McGrath asserted that the government had failed to establish that he satisfied the essential elements of the substantive money laundering statute. Next, he asserted that the government had placed him in double jeopardy by charging him with both conspiracy to launder money and the substantive offense of conducting an illegal gambling operation. McGrath's third assertion was that the substantive money laundering statute was unconstitutionally vague as it applied to him. Finally, McGrath maintained that the substantive money laundering statute was overbroad.[6]

(..continued)
violation of Title 18 U.S.C. § 1952 (a)(3). Counts six and eleven charged interstate transportation of gambling devices, in violation of Title 18 U.S.C. §§ 1172 and 1176. Counts thirteen to twenty-nine charged thirteen of the defendants with substantive money laundering offenses in violation of Title 18 U.S.C. § 1956(a)(1)(A)(i). On July 17, 1993, upon motion of these defendants, the district court issued an opinion and order dismissing most of the substantive money laundering counts (Counts 13, 14, 16, 17, 18, 21, 22, 23, 24, 26, 27, 28 and 29) on duplicity grounds. The government has not appealed that order.

[5]. They are Duffy Conley, Sheila Smith, Jack Conley, Mark Abbott, Joanne Smith, Ken Goodwin, Laurence Demino, Thomas Ciocco, Michael Sukaly, Phillip Ferrell, Anestos Rodites and William Rusin. On September 3, 1993, the district court granted their motions to join in McGrath's motion.

[6]. We note that although all four of these issues were raised before the district court, the district court's opinion focused on addressed McGrath's double jeopardy argument. Because the district court granted McGrath's motion on the basis of this argument, the court decided that McGrath's remaining contentions were mooted by its Memorandum Opinion. United States v. Conley, 833 F. Supp. at 1158, n.33.

On June 19, 1992, the government responded to these arguments, observing that, "Virtually all of McGrath's challenges to Count One of the Indictment . . . fail for a very simple reason. McGrath has not addressed or applied the directives of the law governing a conspiracy charge." The government further observed, "McGrath is charged with conspiracy, not money laundering . . . . McGrath instead proceeds from the false assumption that the government must marshall the evidence to demonstrate that he is guilty of a substantive money laundering violation." (App. at 156).[7]

On September 3, 1993, the district court granted McGrath's motion to dismiss and ordered that the money laundering object of the conspiracy alleged in Count One of the indictment at ¶21(b) be stricken with prejudice. The district court's forty page opinion focused on McGrath's double jeopardy argument, identifying two separate aspects of this argument. Paraphrasing the motion, the district court stated, "First, [McGrath] contends that the conspiracy to launder money is the same offense as the substantive illegal gambling charge." The district court

(..continued)
Accordingly, we need not reach any of these issues on appeal, as none of these other issues has been raised by the appellees as alternative grounds in support of the district court's decision.

[7]. McGrath acknowledges that he has not been charged with a substantive violation of the money laundering statute; he argues that he was entitled to dismissal of Count One because "he had not been charged with any substantive money laundering offenses, nor had he been charged with any overt money laundering acts in furtherance of a money laundering conspiracy." (App. at 125, 134.)

correctly rejected this double jeopardy argument, concluding that, "Conspiracy to launder money and conducting an illegal gambling operation were not the same offense for purposes of double jeopardy." United States v. Conley, 833 F. Supp. at 1130. The district court, however, was troubled by McGrath's "implicit" argument that "an illegal gambling business is a lesser included offense of laundering the `proceeds' of an illegal gambling business, despite [McGrath's] being charged with substantive illegal gambling, but not money laundering." Id. The district court opined, "If violation of the illegal gambling prohibition is a lesser included offense of money laundering and Congress's intent to impose multiple punishments is not clear, the propriety of alleging a `lesser included object' as a separate object must be addressed." The district court surmised that "If Congress intended the facts alleged to be covered by both statutes, with multiple punishments, a conspiracy alleging both objects is properly charged." Id.

After engaging in an extensive analysis of legislative history, the district court concluded that congressional intent to impose multiple punishments was not clear. As a consequence, the court applied the rule of lenity, holding that double jeopardy constraints prevented a defendant from being charged with both substantive illegal gambling offenses and substantive money laundering offenses. The district court then observed the impossibility of being indicted for conspiring to do something legal: "That Count One, the conspiracy count, does not charge Defendants with substantive money laundering cannot save the

money laundering object of the conspiracy count.  An agreement to engage in conduct that is not illegal under Section 1956 can no more be the basis of a conspiracy conviction than the conduct itself can be the basis of a substantive conviction."[8]  833 F. Supp. at 1158.  Based upon this observation, the district court concluded, "[T]he money laundering object of the conspiracy fails to state an offense under 18 U.S.C. § 371 and 18 U.S.C. § 1956 (a)(1)(A)(i)."  Accordingly, the district court dismissed the money laundering object of the conspiracy contained in Count One.

The district court had subject matter jurisdiction pursuant to Title 18, United States Code, Section 3231.  We have appellate jurisdiction of the dismissal of a portion of an indictment pursuant to Title 28, United States Code, Section 3731.  See Sanabria v. United States, 437 U.S. 54, 69 n.23 (1978) (holding "there is no statutory barrier to an appeal from an order dismissing only a portion of a count").  Our task is to determine, on plenary review,[9] whether the district court

_____

[8].     The district court noted:

> The crux of the money laundering object of the conspiracy count is that "during the period November 1986 through September 1991 cash proceeds from illegal gambling involving video poker machines was received, transferred, delivered, deposited or otherwise transacted by the defendants in violation of Title 18, United States Code, Section 1956.  If this actually could not be properly charged as substantive money laundering, it cannot survive as a money laundering object of the conspiracy count.

United States v. Conley, 833 F. Supp. at 1156.

[9].     Our review of the sufficiency of an indictment to charge an offense is a legal question subject to plenary review.

committed legal error in concluding that the indictment is violative of the prohibition against double jeopardy.

II.

The Double Jeopardy clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., Amdt. 5. This protection applies both to multiple punishments and successive prosecutions for the same criminal offense.[10] In the contexts of both multiple punishments and successive prosecutions, the double jeopardy bar applies if the two offenses for which the defendant is punished or tried constitute the same offense. Blockburger v. United States, 284 U.S. 299 (1932).

Criminal statutes need not be identical to be constitute the same offense for purposes of double jeopardy analysis. Brown v. Ohio, 432 U.S. 161, 164 (1977). In order to determine whether two offenses are the same offense sufficient to warrant protection against multiple punishments, we inquire whether "[e]ach of the offenses created requires proof of a different element." Blockburger v. United States, supra. More specifically, "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory

(..continued)
United States v. Leo, 941 F.2d 181, 188 (3d Cir. 1991); United States v. Olatunji, 872 F.2d 1161, 1163 (3d Cir. 1989).

[10]. The principles we describe are well settled and the district court appropriately applied them. We state them here for the purpose of putting in context the second argument advanced by the defendants which the district court adopted.

provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  Id.  In Garrett v. United States, 471 U.S. 773 (1985) the Supreme Court further refined the Blockburger test in a double jeopardy analysis. Under Garrett, "[t]he critical inquiry is whether the . . . [broader] offense is considered the `same offense' as one or more of the predicate offenses within the meaning of the double jeopardy clause."  471 U.S. at 786.  In pursuing this inquiry, the Court looked to the general meaning of the term "same" and to the allegations of the actual crimes charged and asked if they were the "same offense."  471 U.S. at 786.

As the Court held in Whalen v. United States, 445 U.S. 684, 692 (1980), however, the Blockburger test is one of statutory construction:  it reflects the assumption that "Congress ordinarily does not intend to punish the same offense under two different statutes."  Id.  Because the rule "serves as a means of discerning congressional purpose [, it] should not be controlling where, for example, there is a clear indication of contrary legislative intent."  Albernaz v. United States, 450 U.S. 333, 340 (1981).  Congress, under this circumstance, may impose cumulative punishments.  The double jeopardy clause's protection against multiple punishments in a single case ensures only that a court does not impose a punishment in excess of the punishment intended by the legislature.  See Missouri v. Hunter, 459 U.S. 359, 368 (1983) ("[l]egislatures, not courts, prescribe the scope of punishments").

Evidence which establishes a violation of more than one criminal statute does not necessarily indicate that those statutes proscribe the same offense. United States v. Felix, 112 S. Ct. 1377 (1992). Instead, the test enunciated in Blockburger "focuses on the proof necessary to prove the statutory elements of each offense rather than on the actual evidence to be presented at trial." Illinois v. Vitale, 447 U.S. 410, 416 (1980).

In Ianelli v. United States, 420 U.S. 770, 777 (1975), the Court noted that "[t]raditionally the law has considered conspiracy and the completed substantive offense to be separate crimes." Although the substantive offense forms a part of the conspiracy offense and therefore could be considered by some to be one of its "incidents," the Court held that "the conspiracy to commit an offense and the subsequent commission of that crime normally do not merge into a single punishable act." Id. Thus the conspiracy and substantive offenses would not be considered the same offense for double jeopardy purposes because "[c]onspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act." Id. An agreement to commit a substantive offense presents distinct dangers beyond those associated with the commission of the offense itself:

> Concerted action both increases the likelihood that the criminal object will be successfully attained and decreased the probability that the individual involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish.

Id. at 778.

In cases involving the interactions between other, more complex criminal statutes, similar reasoning effectively has dispelled double jeopardy concerns about the imposition of multiple punishments. See Garrett v. United States, 471 U.S. 773 (1985) (continuing criminal enterprise (21 U.S.C. § 848) and predicate narcotics offenses (21 U.S.C. §§ 841, 843(b), 846, 952, 960, 963)); Albernaz v. United States, 450 U.S. 333 (1981) (conspiracy to import narcotics (21 U.S.C. § 963) and conspiracy to distribute narcotics (21 U.S.C. § 846)); United States v. Console, 13 F.3d 641 (3d Cir. 1993), cert. denied, 62 U.S.L.W. 3722 (1994) (racketeering (18 U.S.C. § 1962) and predicate mail fraud offenses (18 U.S.C. § 1341)).

A.

McGrath maintained before the district court that he would be subjected to multiple punishments for these offenses: conspiracy to commit money laundering, in violation of 18 U.S.C. § 371; and conducting an illegal gambling business, in violation of 18 U.S.C. § 1955. The starting point -- and the ending point as well -- are the essential elements of each of these statutes.

In order to prove conspiracy to commit money laundering, the government must establish the following three essential elements: (1) the conspiracy, agreement, or understanding to commit money laundering was formed, reached, or entered into by two or more persons; (2) at some time during the

existence or life of the conspiracy, agreement, or understanding, one of its alleged members knowingly performed one of the overt acts charged in the indictment in order to further or advance the purpose of the agreement; and (3) at some time during the existence or life of the conspiracy, agreement, or understanding, the defendant knew the purpose of the agreement, and then deliberately joined the conspiracy, agreement or understanding. See United States v. Rankin, 870 F.2d 109, 113 (3d Cir.), cert. denied, 493 U.S. 840 (1989).

To prove a violation of the illegal gambling statute, the government must establish these three elements: (1) a gambling business described in the indictment was conducted which violated the laws of the state in which it was conducted; (2) five more persons including the defendant, knowingly and deliberately conducted, financed, managed, supervised, directed or owned all or part of that gambling business; and (3) the gambling business was either in substantially continuous operation for more than thirty days, or, alternatively, the gambling business, on at least one day, had gross revenues of two thousand dollars or more. 18 United States Code § 1955(a) and (b); Iannelli v. United States, 420 U.S. 770, 772 (1975).

Clearly, conviction of the conspiracy statute requires proof of an element which the gambling statute does not: that the conspiracy, agreement, or understanding to commit money laundering was formed, reached, or entered into by two or more persons, not necessarily including the defendant. Just as clearly, conviction of the gambling statute requires proof of an

element which the conspiracy statute does not:  that five or more persons, including the defendant, knowingly and deliberately conducted, financed, managed, supervised, directed or owned all or a part of a gambling business.  The statutes, therefore, do not constitute the same offense for double jeopardy purposes.

Insofar as the district court found that a conspiracy to launder money and a substantive violation of the illegal gambling business prohibition were not the same under Blockburger and thus  concluded that Congress intended multiple punishments for a conspiracy to launder money and violation of the substantive illegal gambling prohibition, the district court was correct in so holding.  The district court's analysis, however, did not end here; it is this second portion of its analysis that gives us concern.  We turn now to McGrath's second contention.

B.

McGrath next asserted before the district court that the money laundering object of the conspiracy is the "same offense" as the illegal gambling business object of the conspiracy under Blockburger.  The essence of McGrath's argument was that "the money laundering activity charged in this case is temporally and statutorily the same activity necessary to conduct an illegal video poker gambling business."  McGrath contends before us that a wide variety of transactions involving the money placed into the video poker machines is necessarily part of the illegal gambling business, including collecting and counting money, dividing up money, transferring and transporting money, depositing money into banks and withdrawing money from banks.  McGrath contends that this same conduct cannot be properly alleged to be money laundering.  See 833 F. Supp. at 1156.

In analyzing the alleged "sameness" between the money laundering activity and the "specified unlawful activity," i.e., the illegal gambling activity, the district court found that conducting the illegal gambling business constituted a "species of lesser included offense" of money laundering if it is the elements of the illegal gambling business upon which the government seeks to rely to prove "specified unlawful activity." 833 F. Supp. at 1133.

Apparently troubled by the superficial similarity between the substantive money laundering offense and the substantive illegal gambling offense, the district court addressed whether conducting "an illegal gambling business is a

lesser included offense of laundering the `proceeds' of an illegal gambling business . . . ." Id. The district court reasoned that if the substantive illegal gambling statute is a lesser included offense of the substantive money laundering statute, double jeopardy principles may prohibit the government from charging conspiracy to commit money laundering and the substantive offense of conducting an illegal gambling business.

Because McGrath had not been charged with substantively laundering any "proceeds," the district court justified its consideration of these two statutes by reasoning that "[f]or an agreement to constitute a conspiracy . . . the object of the agreement or the means of effectuating it must be illegal." 833 F. Supp. at 1156. This statement is certainly true. As we have observed, in order to convict a defendant of conspiracy, the government must "prove an agreement which contemplates the commission of a crime and that such crime is in fact and law a federal offense." United States v. Pepe, 512 F.2d 1192, 1132 (3d Cir.), cert. denied, 423 U.S. 893 (1975). In keeping with this, the district court should have ascertained whether the conduct alleged as the object of the conspiracy would, if completed, constitute a violation of the substantive money laundering statute. Indeed here it does constitute such a violation. See App. at 73-83 (overt acts in the indictment detailing activities proscribed by the substantive money laundering statute). Because "the object of the agreement" was illegal, the district court should have concluded its inquiry. Instead, the district court made reference to an entirely different statute, one proscribing

the conduct of an illegal gambling business.  <u>See</u> 18 United States Code § 1955 (1988).

We are concerned with the district court's focus on whether the substantive offense of conducting an illegal gambling operation and the substantive offense of money laundering were the same for purposes of double jeopardy, because McGrath was never charged with the substantive offense of money laundering. Based upon its finding of a double jeopardy problem with the simultaneous application of these two statutes -- the substantive money laundering statute and the substantive illegal gambling statute -- the district court held,

> Because the intent of Congress to impose a punishment under section 1956(a)(1)(A)(i) for acts already penalized under the illegal gambling statute is not clear, and because defendant McGrath and the joining defendants are entitled to the benefit of the rule of lenity, the court holds that activities penalized under section 1955, the Prohibition of Illegal Gambling Businesses, are not without more, also punishable under Section 1956(a)(1)(A)(i).  Section 1956(a)(1)(A)(i) will continue to apply in the context of an illegal gambling business where the "promoted" "specified unlawful activity" is other than the underlying illegal gambling business, and section 1956(a)(1)(A)(i) will continue to apply to the core of money laundering.

833 F. Supp. at 1158 (citations omitted).  We disagree with the district court's conclusion that a substantive illegal gambling offense can never constitute the "specified unlawful activity" for purposes of the money laundering statute.  Its decision that a money laundering conviction under section 1956(a)(1)(A)(i) may

not be based on the income from an illegal gambling business, unless there exists some additional form of specified unlawful activity, is erroneous and is not supported by the statutory language or legislative history.

As written, the money laundering statute requires that money laundering transactions be conducted with the "proceeds" of specified unlawful activity and that such transactions be committed with the intent either to promote the specified unlawful activity or to conceal the nature or source of the income.  The money laundering activity and the illegal gambling activity, therefore, do not constitute the "same offense" within the meaning of Blockburger due to this "intent" requirement.[11]

The acts of conducting an illegal gambling business consist of placing, maintaining and servicing video poker machines in various locations.  An additional aspect of conducting an illegal gambling business necessarily includes the collecting of the proceeds of the illegal gambling activity.  The

---

[11].      We have interpreted this "intent to promote" requirement broadly and have held that a defendant can engage in financial transactions that promote not only ongoing or future unlawful activity, but also prior unlawful activity.  United States v. Paramo, 998 F.2d 1212, 1215 (3d Cir. 1993), cert. denied, 62 U.S.L.W. 3551 (1994).  There, we held that Paramo had the intent to promote specified unlawful activity, mail fraud, by cashing embezzled IRS checks.  Although none of the proceeds obtained from the earlier mail frauds were actually used to facilitate the subsequent frauds, we recognized that it did not have to be a future mail fraud that was promoted, it could be a past mail fraud or an ongoing mail fraud.  Because cashing the checks was necessary to realize any benefit from the mail fraud, we held that it was permissible for the jury to infer Paramo cashed each stolen check with the intent to promote the carrying on of the antecedent fraud.

district court touches upon the concern that the money laundering statute not be applied so broadly as to cover any and all dispositions of the proceeds of the specified unlawful activity. Obviously, whenever a defendant makes money from criminal activity he has to do something with it. As the district court correctly observed, Congress did not enact money laundering statutes simply to add to the penalties for various crimes in which defendants make money. 833 F. Supp. at 1155-56.

However, in prosecutions under Sections 1956(a)(1), this concern is adequately addressed by applying the "promotion" and "concealment" branches of § 1956's "intent" requirement. Section 1956(a)(1), quite clearly, does not prohibit all financial transactions that are conducted with the proceeds of specified unlawful activity. It only proscribes those transactions that are conducted with the intent to promote certain further illegal activity, under subsection (A), or that are designed to conceal under subsection (B).

These requirements would preclude the application of section 1956 to non-money laundering acts such as a defendant's depositing the proceeds of unlawful activity in a bank account in his own name and using the money for personal purposes. See, e.g., United States v. Jackson, 935 F.2d 832 (7th Cir. 1991). In Jackson, the defendant was prosecuted for money laundering when he used the proceeds of drug transactions to purchase telephone paging beepers and car telephones. He also used the drug proceeds to make rental payments. The Court of Appeals for the Seventh Circuit held that the evidence showed that purchasing the

beepers promoted further drug activity, but that purchasing the car phones and making rental payments did not.

Applying these principles here, we note that after the proceeds are collected, the treatment given to them may be such that it violates § 1956, as well as § 1955.  If the proceeds are treated in a manner so as to conceal that their source is illegal gambling, § 1956(a)(1)(B) has been violated.  If subsequent financial transactions are conducted with these proceeds with the intent to <u>promote</u> the illegal gambling activity, § 1956(a)(1)(A) has been violated.[12]  The element charged in the latter violation, which was not necessary for the offense of conducting an illegal gambling business is that of "promotion," i.e., the advancing or furthering of the illegal gambling business.

McGrath's assertion that the activity of dividing up, collecting, transferring and even depositing proceeds into a bank are essential facets of carrying on an illegal gambling business, and therefore, cannot, due to double jeopardy constraints, serve as the basis for a money laundering object of conspiracy must fail.  The acts McGrath identifies as constituting an "integral

---

[12].      Count One charged (¶ 21b, app. 59-60) that the defendant (Conley) conducted financial transactions affecting interstate commerce with the proceeds of illegal gambling with video poker machines "with the intent to promote the carrying on of specified unlawful activity, illegal gambling with video poker machines . . . ."  Specifically, Count One charged that Conley used illegal gambling proceeds to purchase more video poker machines (¶ 29, app. 65) and to pay employees of Duffy's Vending. (¶ 31, app. 65).   The overt acts alleged included numerous payments to Matrix, an entity used to service the poker machines. These allegations are sufficient to charge a money laundering offense under the promotion branch of 18 U.S.C. § 1956(a)(1).

part of the illegal gambling business" would likewise constitute an integral part of many other criminal enterprises, such as a narcotics business.

In arguing that the money laundering activity in this case was "temporally" the same activity necessary to conduct an illegal video poker gambling business, McGrath relies on two recent cases interpreting the Money Laundering Control Act which suggest that § 1957 would apply only to monetary transactions occurring after the completion of the underlying criminal activity. In United States v. Edgmon, 952 F.2d 1206 (10th Cir. 1991), cert. denied, 112 S.Ct. 3037 (1992) and United States v. Lovett, 964 F.2d 1029 (10th Cir.), cert. denied, 113 S. Ct. 169 (1992), the Court of Appeals for the Tenth Circuit confronted double jeopardy challenges to convictions under the Money Laundering Control Act. In each of these cases, the Court of Appeals concluded that Congress intended to impose separate punishments for money laundering transactions and for the underlying criminal activity, and that it intended the money laundering statutes to apply to transactions occurring after the completion of the underlying criminal activity. With respect to § 1956, the court stated that, "Congress aimed the crime of money laundering at conduct that follows in time the underlying crime rather than to afford an alternative means of punishing the prior `specified unlawful activity." Id. at 1214 (emphasis added). In United States v. Lovett, supra, the court reached the same conclusion with respect to § 1957. Later, in United States v. Johnson, 971 F.2d 562 (10th Cir. 1992), the Court of Appeals held

that it was possible to construe the phrase "proceeds obtained from a criminal offense" more broadly than this. The court held that "one might logically infer that Congress would have intended § 1957 to apply when the underlying criminal activity occurs simultaneously with a monetary transaction with the proceeds of the activity." 971 F.2d at 569.

Our decision in this case is not inconsistent with these cases requiring that there be some distinction between the specified unlawful activity and the financial transaction. Our decision today is consistent with our decision in United States v. Paramo, 998 F.2d 1212 (3d Cir. 1993), cert. denied, 62 U.S.L.W. 3551 (1994), and with the statutory requirement that the financial transaction involve "proceeds" of unlawful activity. Although the money laundering statute does not define when money becomes "proceeds," it is obvious to us that proceeds are derived from an already completed offense, or a completed phase of an ongoing offense, before they can be laundered. See Paramo, 998 F.2d 1212 (the specified unlawful activity was legally completed mail fraud -- the proceeds of which were ripe for laundering.)[13] Here, gambling activity occurred at various business establishments where the video poker machines were located. We find that the money, once collected from the poker machines,

---

[13]. Paramo, however, did not involve financial transactions with proceeds obtained from an ongoing offense, which is what is alleged here. In Paramo, there was no dispute that the underlying offense and specified unlawful activity were legally completed prior to the financial transaction comprising the money laundering. Thus, Paramo does not answer the question of when money becomes "proceeds" ripe for laundering, at issue here.

became "proceeds of specified unlawful activity" within the meaning of the money laundering statute.  Accordingly, any subsequent financial transaction involving these proceeds that promotes or furthers the illegal gambling business could form the basis of a charge of money laundering.

The fact that there may be some overlap in the acts alleged to constitute the conduct of an illegal gambling business and money laundering does not give us pause.  We are mindful that Blockburger is only a test of statutory construction.  In conducting a double jeopardy analysis, the goal is to ascertain legislative intent and to apply the statute at issue, as written, in keeping with that intent.  Here, we find that the district court erred in failing to apply the money laundering statute as written.

As enacted by Congress, Title 18, United States Code, Section 1956(a)(1) prohibits financial transactions with the proceeds of specified unlawful activity.  Congress has determined that "specified unlawful activity" includes conducting an illegal gambling business under Title 18, United States Code, Section 1955.  The term "specified unlawful activity" is expressly defined in § 1956(c)(7)(A) as, "any act or activity constituting an offense listed in section 1961(1) of this title . . . ."  Title 18, United States Code, Section 1961(1)(B) identifies specified unlawful activity as "any act which is indictable under any of the following provisions of Title 18, United States Code . . . ."  Section 1955, the prohibition of illegal gambling business, is included in the list of offenses enumerated in Title

18, United States Code, Section 1961(1)(B). By including the conducting of an illegal gambling business in its list of specified unlawful activities on the same footing with numerous other offenses, Congress has indicated that no additional "specified unlawful activity" is required for the money laundering statute to apply when the specified unlawful activity is an illegal gambling business.[14]

Furthermore, the legislative history of the Money Laundering Crimes Act of 1986, of which section 1956 is a part, indicates that illegal gambling activity was an area of congressional concern. The comments by Senator Strom Thurmond, one of the bill's sponsors, are illustrative:

---

[14]. The Court of Appeals for the First Circuit recently observed in United States v. LeBlanc, 24 F.3d 340 (1st Cir. 1994) that although the "classic" money laundering case is where a "drug trafficker collects large amounts of cash from drug sales and deposits the drug proceeds in a bank under the guise of conducting a legitimate business transaction," the Money Laundering Control Act "prohibits a much broader range of conduct than just the `classic' example of money laundering." The Court of Appeals stated, "The language of the statute, in conjunction with the definitions provided in 18 U.S.C. § 1956(c) indicates that Congress intended to criminalize a broad array of transactions designed to facilitate numerous federal crimes, including illegal gambling." 24 F.3d at 346.

In Leblanc, the court of appeals held that the defendants' offenses (money laundering and operating an illegal gambling business) fell within the "heartland" of money laundering cases and reversed the district court's grant of a downward departure under the sentencing guidelines on the theory that the offenses were essentially the operation of an illegal gambling business. See also United States v. Stavroulakis, 952 F.2d 686, 691 (2d Cir. 1992) ("Congress has made clear that concealing the source of illegal gambling proceeds is just as detrimental to society as concealing the source of narcotics money.").

> The President's Commission on organized crime
> has identified money laundering as one of the
> greatest challenges facing law enforcement
> today.  A recent Wall Street Journal article
> states that illegal doings, gambling and vice
> generate $150 billion dollars annually.  It
> is readily apparent that criminals rely on
> laundering schemes to hide the identities and
> true source of the proceeds.

See Senate Report (S. Rep. 99-43), 99th Cong., 2d Session, pp.3-4 (1986); Congressional Record (132 Cong. Rec. 17571, July 24, 1986).

The district court, in holding that conducting an illegal gambling business cannot satisfy the specified unlawful activity requirement of the money laundering statute, has unduly narrowed the scope of the money laundering statute.  In so doing, the district court has interpreted this statute in a manner inconsistent with its express provisions and legislative intent.

Since Count One did not charge any specified unlawful activity other than conducting an illegal gambling business, the district court found that Count One failed to charge a conspiracy to commit money laundering.  Because we find that the conduct in this case, conducting an illegal gambling business, constitutes "specified unlawful activity" within the meaning of the money laundering statute, we conclude that Count One is sufficient to charge a conspiracy to commit money laundering.[15]  Accordingly,

_____

[15].        It is not our role at this juncture to comment on the sufficiency of the government's evidence to support a conviction for money laundering.  We observe only that the government may allege and prove conspiracy even if the underlying substantive object of the conspiracy is never completed.  For this reason, a conspiracy indictment need not allege every element of the underlying offense, but need only put defendants on notice that

we will remand this case to the district court so that the money laundering object of the conspiracy alleged in Count One may be reinstated.

III.

For the foregoing reasons, we will vacate the judgment of the district court dismissing the money laundering object of the Count One of the indictment and remand to the district court for its reinstatement.

(..continued)
they are charged with a conspiracy to commit the underlying substantive offense.  United States v. Werme, 939 F.2d 108, 112 (3d Cir. 1991), cert. denied, 112 S. Ct. 1165 (1992); United States v. Wander, 601 F.2d 1251, 1259 (3d Cir. 1979).