

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-2008

# USA v. Chartock

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1973

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Chartock" (2008). *2008 Decisions.* Paper 958.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/958

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-1973

———

UNITED STATES OF AMERICA,

v.

PHILIP CHARTOCK,

*Appellant*

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 05-cr-00614-02)
District Judge: Honorable Lawrence F. Stengel

———

Argued on June 4, 2008

Before: FISHER, JORDAN, and VAN ANTWERPEN, *Circuit Judges*.

(Filed June 30, 2008)

Peter Goldberger, Esq. (Argued)
Law Office of Peter Goldberger
50 Rittenhouse Place
Ardmore, PA 19003-2276

    *Counsel for Appellant*

Patrick L. Meehan, Esq.
Robert A. Zauzmer, Esq. (Argued)
Michael A. Schwartz, Esq.
Office of United States Attorney
Suite 1250
615 Chestnut Street

Philadelphia, PA 19106

*Counsel for Appellee*

———

OPINION OF THE COURT

———

VAN ANTWERPEN, *Circuit Judge*.

Appellant Philip Chartock appeals from the judgment of conviction and sentence entered by the District Court for the Eastern District of Pennsylvania on April 6, 2007. For the following reasons, this Court will affirm.

I.

We will set forth only those facts necessary to our analysis.

This case centers around an alleged scheme by Richard Mariano, Philip Chartock, and other co-defendants to defraud the citizens of Philadelphia of the honest services of Richard Mariano. Mariano was a member of the Philadelphia City Council and represented the Seventh Councilmanic District, which comprises North Philadelphia and parts of Northeast Philadelphia. Philip Chartock (and his father Louis Chartock, before him) owned Erie Steel, Ltd. ("Erie"), a company located within Mariano's district. According to the indictment, Philip Chartock indirectly made three payments to Richard Mariano in 2002, and Richard Mariano afforded favorable treatment to Erie from at least 2002 to 2005.

The first payment occurred on or about May 10, 2002. Philip Chartock gave Mariano a check drawn from Erie's account in the amount of $5,873.75. This check was

not made payable directly to Mariano, but instead was made payable to Fleet Credit Card Services, so that Mariano could pay his personal credit card bill. Upon Philip Chartock's direction, Erie bookkeeper Maggie Greer classified the check as a sales expense.

Only a few days prior to this payment, officials from the Air Management Services Division of the City of Philadelphia Department of Public Health ("Air Management") attempted to inspect Erie to determine if the company was complying with the City's air pollution standards. Philip Chartock did not consent to the inspection on that day and called Mariano when the inspectors left. Mariano immediately called Air Management on Erie's behalf. Once it was determined that Erie was in violation of a number of regulations, Mariano used his influence to help postpone for several years potentially costly corrective measures that were necessary for Erie to comply with the applicable regulations.

The second payment occurred on or about August 26, 2002. Prior to this payment being made, outside accountants had discovered and questioned the circumstances surrounding the May 10, 2002 check from Erie to Fleet Credit Card Services. When Philip Chartock told the outside accountants that the check was for the payment of a politician's debt, the accountants told Philip Chartock that the payment should be classified as a loan, not a sales expense. To avoid further scrutiny, this second payment was not made directly to Mariano's credit card company, but rather was channeled through several intermediaries.

First, an Erie check in the amount of $6,672.00 was written and made payable to

3

William Burns. This check was falsely classified as a cleanup and removal expense.

Rosalia Mattioni, who shared a joint account with William Burns, was given the Erie

check by her husband Joseph Pellecchia[1] following a meeting between Mariano and

Pellecchia. Rosalia Mattioni deposited this Erie check into the joint account and obtained

a cashier's check in the amount of $6,672.00 made payable to AT&T Universal Card, in

accordance with Joseph Pellecchia's instructions. A fake invoice was then sent by

Mattioni to Erie. This check was used to pay the personal credit card bills of Mariano.

At around the time of this second payment, Philip Chartock was seeking Mariano's

assistance in obtaining tax relief for Erie through a program known as Keystone

Opportunity Zone ("KOZ"). On November 13, 2002, a meeting was organized at

Mariano's office involving Mariano, Philip Chartock, and Keystone Opportunity Zone

Administrator Vincent Dougherty, among others. At this meeting, Dougherty explained

that Erie did not meet the criteria for the tax relief. Despite Dougherty's explanation that

Erie did not qualify for relief, the Chartocks continued to seek inclusion in the KOZ

program, and on November 25, 2002, Louis Chartock asked Mariano to introduce

legislation making Erie eligible for tax relief.

Shortly after this request, on or about December 6, 2002, Philip Chartock made the

third payment. Like the second payment, this payment was also channeled through an

---

[1] Rosalia Mattioni and Joseph Pellecchia owned and operated Danlin Management Group. Danlin Management Group received favorable treatment from Mariano following its actions with respect to this second payment.

intermediary rather than being made payable directly to Mariano's credit card company. An Erie check in the amount of $10,900.00 was written and made payable to Recon International,[2] a company owned by co-defendant Vincent DiPentino. This payment was improperly classified as a freight, equipment, and rental expense by Erie, and DiPentino sent a fake invoice to Philip Chartock. DiPentino deposited this check into his personal account and wrote a check in the amount of $10,900.00 made payable to Capital One to pay Mariano's personal debts.

After these payments were made, Mariano continued to recommend that Erie be included in new KOZ tax relief legislation. In April 2003, Erie was included in a proposed KOZ tax relief bill introduced into City Council. In May 2003, Mariano voted twice in favor of the KOZ tax relief bill, and the bill ultimately became law. During neither affirmative vote did Mariano disclose his financial relationship with Erie or recuse himself from the voting, as required by law. Mariano also failed to include the payments from Erie on the State and City financial disclosure forms, as required by law.

Even after being included in the KOZ tax relief legislation, Philip Chartock and his father continued to seek additional favors from Mariano. These requested favors included assistance with energy rate reductions from PECO, resolution of outstanding tax issues, removal of a judgment against Erie, and rate reductions from the Pennsylvania Workers' Compensation Rating Bureau.

---

[2] Recon International received favorable treatment from Mariano following its actions with respect to this third payment.

The alleged honest services fraud scheme became public when Maggie Greer, the Erie bookkeeper who had helped handle the payments to Mariano and was herself later charged with embezzling money from Erie, wrote an anonymous letter dated April 30, 2004 to the City Council President and the Mayor detailing the Mariano-Chartock honest services fraud scheme. Mariano immediately learned of this letter from the City Council President, and told his Chief of Staff, Walter DeTreux, that the first payment to his credit card was a loan and that it had been repaid. Other steps were also taken by Philip and Louis Chartock to disguise the payments as loans. In May 2004, while meeting with Assistant District Attorney Steven Hyman regarding the embezzlement case against Maggie Greer, Philip Chartock told Hyman that he had loaned money to Mariano, that Mariano repaid the loan, and that he could likely locate a receipt. Following this meeting, a fake receipt dated May 3, 2004 was created, and the receipt bore Philip Chartock's signature.

On March 30, 2005, Philip Chartock told FBI Agent Raymond Manna that the check written to Fleet Credit Card Services (the first payment) was a loan and that Mariano repaid the loan, but he told Agent Manna that there were no loan documents. With respect to the checks related to the second and third payments (to William Burns and Recon International, respectively), Philip Chartock told Agent Manna that he signed the checks, but stated that he knew nothing about the checks. Finally, although Philip Chartock admitted to Agent Manna that Mariano had helped Erie with various issues, Philip Chartock never mentioned Mariano's help with the KOZ tax relief legislation.

6

On October 25, 2005, a grand jury in the Eastern District of Pennsylvania returned a 26-count indictment naming Philadelphia City Councilman Richard Mariano and five co-defendants, including Philip Chartock. Philip Chartock was charged in eleven counts. Count 1 charged Philip and Louis Chartock, among others, with conspiracy to commit honest services mail and wire fraud under 18 U.S.C. § 371. Counts 2 through 8 charged Philip Chartock (together with Louis Chartock in Counts 3 and 8) with aiding and abetting honest services mail fraud in violation of 18 U.S.C. §§ 2, 1341, and 1346. Count 14 charged Philip and Louis Chartock with aiding and abetting honest services wire fraud in violation of 18 U.S.C. §§ 2, 1343, and 1346. Counts 18 and 19 charged Philip Chartock with money laundering in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(B)(I).

In pretrial motions, Philip Chartock moved to dismiss the indictment, contending that the honest services fraud charges were unconstitutionally vague and that the money laundering charges did not involve the proceeds of illegal activity. The District Court denied these motions to dismiss the indictment. The case then proceeded to trial on April 24, 2007. On May 8, 2007, the jury found Philip Chartock guilty of conspiracy to commit honest services fraud (Count 1), aiding and abetting honest services mail fraud (Counts 2, 3, 4, 5, and 6), aiding and abetting honest services wire fraud (Count 14), and money laundering (Counts 18 and 19). The jury found Philip Chartock not guilty on one count of aiding and abetting honest services mail fraud (Count 8), and the Government successfully moved to dismiss one of the honest services mail fraud charges (Count 7). In response to specific jury interrogatories requested by Philip Chartock, the jury found

7

Philip Chartock guilty under both the bribery and failure to disclose theories[3] on Counts 2, 3, 4, and 14, and found Philip Chartock guilty of Counts 5 and 6 only under the failure to disclose theory.

Philip Chartock filed a post-trial motion seeking judgment of acquittal or a new trial, challenging the sufficiency of the evidence supporting the honest services fraud and money laundering convictions. Philip Chartock also challenged the District Court's jury instruction concerning the meaning of "on or about" as used in the indictment. On March 1, 2007, the District Court denied the post-trial motions.

After a sentencing hearing on March 19, 2007, the District Court sentenced Philip Chartock to a term of imprisonment of 40 months, a term of supervised release of two years, a fine of $25,000, and a special assessment of $900. Chartock filed a timely notice of appeal.

## II.

The United States District Court for the Eastern District of Pennsylvania had subject matter jurisdiction over this case pursuant to 18 U.S.C. § 3231. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## III.

### A. *Honest Services Fraud - Failure to Disclose Theory*

Honest services fraud can be proven in two ways: "(1) bribery, where a legislator

---

[3] These theories of guilt for honest services fraud are more fully described herein.

8

was paid for a particular decision or action; or (2) failure to disclose a conflict of interest resulting in personal gain." *United States v. Antico*, 275 F.3d 245, 262-63 (3d Cir. 2001). The Government concedes that "to convict a private citizen, such as Chartock, of the failure to disclose a conflict of interest theory of honest services fraud, the government must introduce sufficient evidence to prove that the private citizen was aware that the public official was required to disclose their relationship and that the private citizen knowingly assisted the public official in the failure to disclose." *Gov't Br.* at 38. Chartock[4] argues before this Court that: (1) the indictment failed to include in each count an allegation that he had knowledge of Mariano's disclosure requirements; (2) the evidence was insufficient to prove that he possessed such knowledge; and (3) the District Court failed to instruct the jury that it could not convict him unless he possessed such knowledge. These arguments will each be dealt with separately below.

### 1. Sufficiency of Indictment

A claim that the indictment failed to properly plead honest services fraud violations is a legal question subject to plenary review. *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007). An indictment is considered sufficient if it: "'(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent

---

[4] In this opinion, when the word "Chartock" is used alone, the word refers to Philip Chartock.

9

prosecution.'" *Id.* (quoting *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007)). "'[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.'" *Kemp*, 500 F.3d at 280 (quoting *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989)).

With respect to the conspiracy count (Count 1) of the indictment, this Court has stated that "[a]n indictment charging a conspiracy under 18 U.S.C. § 371 need not specifically plead all of the elements of the underlying substantive offense." *United States v. Werme*, 939 F.2d 108, 112 (3d Cir. 1991); *see also Wong Tai v. United States*, 273 U.S. 77, 81 (1927) ("[I]t is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy."). Rather, the indictment simply must "put defendants on notice that they are being charged with a conspiracy to commit the underlying substantive offense." *Werme*, 939 F.2d at 112. Here, the indictment charged Chartock specifically with conspiring to defraud the City of Philadelphia of Mariano's honest services, and the indictment later alleged that Mariano failed to disclose the payments made by Chartock in violation of local and state laws. *App.* at 108-09. Although the indictment did not specifically allege that Chartock knew of Mariano's duty to disclose, the indictment nonetheless sufficiently pleaded an honest services fraud conspiracy.

With respect to the honest services mail/wire fraud counts and the money laundering counts, it should first be noted that these counts incorporate many of the

10

paragraphs from Count 1, including the paragraph describing Mariano's failure to disclose the payments. *See*, *e.g.*, *App.* at 132 (Count 18). Then, at the end of each count, the indictment specifically stated that one of the statutes violated by Chartock was 18 U.S.C. § 2, the aiding and abetting statute. Because "aiding and abetting" requires proof that the "'defendant knew of the crime and attempted to facilitate it,'" *United States v. Cunningham*, 517 F.3d 175, 178 (3d Cir. 2008) (quoting *United States v. Garth*, 188 F.3d 99, 113 (3d Cir. 1999)), the honest services mail/wire fraud and money laundering counts sufficiently pleaded the necessary element that Chartock knew of Mariano's disclosure requirement and knowingly assisted in Mariano's evasion of the requirement.

### 2. Sufficiency of Evidence

Chartock next argues that the evidence was insufficient to permit the jury to find that he knew of Mariano's duty to disclose and that he knowingly assisted in Mariano's failure to disclose. This Court must review the record *de novo* to ensure that the jury's verdict is supported by substantial evidence. *United States v. Mussare*, 405 F.3d 161, 166 (3d Cir. 2005). In determining whether the jury's verdict is supported by sufficient evidence, this Court "must view the evidence in the light most favorable to the Government and sustain the verdict if any rational juror could have found the elements of the crime beyond a reasonable doubt." *United States v.Cothran*, 286 F.3d 173, 175 (3d Cir. 2002).

Chartock notes, and the Government concedes, that there was no direct evidence proving that Chartock knew of Mariano's duty to disclose. "In the absence of direct

11

evidence, however, the requisite knowledge and intent can be demonstrated circumstantially, and where sufficient circumstantial evidence is presented, a jury may properly infer that the defendants were culpably involved with, and knowingly furthered, the fraudulent scheme." *United States v. Pearlstein*, 576 F.2d 531, 541 (3d Cir. 1978) (internal citations omitted) (in the context of a mail fraud scheme). The Government's circumstantial evidence that Chartock concealed payments to Mariano by repeatedly making payments either directly to Mariano's credit card companies or by using a third party intermediary is powerful evidence that Chartock knew of Mariano's disclosure duties. In addition, Chartock devised a scheme to cover up the payments by falsely claiming that the payments were loans and then falsely claiming that the loans had been paid off. The jury certainly acted reasonably in drawing the inference that these efforts at concealment demonstrated that Chartock knew about Mariano's disclosure requirements and that Chartock was knowingly assisting Mariano in the avoidance of these requirements.[5]

Chartock also argues that the efforts at concealment are just as consistent, if not more consistent, with the theory that Chartock sought to disguise the payments as deductible business expenses for tax purposes. However, this Court has stated that

---

[5] Chartock cites to *United States v. Carbo*, 2007 WL 2323126, *22-29 (E.D. Pa. 2007), for the proposition that although the circumstantial evidence of concealment was sufficient to allow a jury to conclude that Chartock knew he was involved in some type of illegality, the evidence does not support an inference that Chartock knew of Mariano's duty to disclose the payments. However, because this Court questions the correctness of the holding in *Carbo*, this Court is not persuaded by this District Court opinion.

"[t]here is no requirement . . . that the inference drawn by the jury be the only inference possible or that the government's evidence forecloses every possible innocent explanation." *United States v. Iafelice*, 978 F.2d 92, 97 n.3 (3d Cir. 1992). The jury was clearly justified in rejecting this alternative explanation of the evidence, and the evidence clearly supported the jury's finding that Chartock knew of Mariano's disclosure requirement and knowingly assisted in Mariano's evasion of that requirement.

### 3. Jury Instructions

Finally, Chartock argues that the District Court's jury instructions were legally erroneous because the District Court failed to instruct the jury that he could not be found guilty unless the jury found that he knew of Mariano's duty to disclose the payments from Erie and that he knowingly aided Mariano's failure to disclose. Additionally, Chartock argues that the District Court abused its discretion in failing to give his requested instruction.

This Court exercises plenary review[6] in determining "'whether the jury instructions stated the proper legal standard.'" *United States v. Leahy*, 445 F.3d 634, 642 (3d Cir. 2006) (quoting *United States v. Coyle*, 63 F.3d 1239, 1245 (3d Cir. 1995)). In making this determination, we must "consider the totality of the instructions and not a particular sentence or paragraph in isolation." *Coyle*, 63 F.3d at 1245. This Court

_____

[6] At oral argument, the Government argued that because Chartock failed to object after the delivery of the charge, review is for plain error. *See United States v. Pelullo*, 399 F.3d 197, 221 (3d Cir. 2005). Because we find no error in the jury instructions, using the plain error standard instead of the plenary standard would not affect our analysis.

13

reviews the refusal to give a requested instruction for abuse of discretion. *Leahy*, 445 F.3d at 642.

The jury instruction regarding honest services fraud adequately defined the requirement that Chartock know of the disclosure requirements and aid Mariano in his avoidance of those requirements.[7] The District Court stated "the Government must prove beyond a reasonable doubt that Councilman Mariano received a benefit which he was required to disclose under state or local law which he failed to disclose, or that he acted under a conflict of interest which he was required to disclose but did not disclose, and that the defendant, one or both, aided and abetted the public official." *App.* at 1566. The District Court later clarified the requirements for "aiding and abetting" as follows:

> In order to be found guilty of aiding and abetting the commission of a crime, the Government must prove beyond a reasonable doubt that the defendant first knew that the crime charged was to be committed or was being committed. Second, that the defendant knowingly did some act for the purpose of aiding the commission of that crime. And third, acted with the intention of causing the crime charged to be committed.

*App.* at 1577.

Viewing these two components of the jury instructions together, this Court concludes that the jury was properly instructed of the requirement of finding that Chartock knew of Mariano's disclosure requirement and assisted in the evasion of that requirement. Because the actual jury instruction properly stated the law, any refusal by

---

[7] The District Court also properly instructed the jury on the conspiracy count (Count 1).

14

the District Court to give a requested instruction was not an abuse of discretion. *See United States v. Davis*, 183 F.3d 231, 250 (3d Cir. 1999) (discretion only abused if requested instruction is "not substantially covered by other instructions").

## B. "Stream of Benefits" Instruction

Chartock also argues that the District Court's "stream of benefits" instruction on the issue of bribery was erroneous. This Court exercises plenary review in determining "'whether the jury instructions stated the proper legal standard.'" *Leahy*, 445 F.3d at 642 (quoting *Coyle*, 63 F.3d at 1245). The District Court, in part, instructed the jury that "[i]f you find beyond a reasonable doubt that a person gave an official a stream of benefits in implicit exchange for one or more official acts, you may conclude that a bribery has occurred." *App.* at 1564. As Chartock acknowledges, this Court recently approved of almost identical language in an honest services bribery case, and Chartock simply raises this issue to preserve it for review. *Kemp*, 500 F.3d at 281-82, *cert. denied*, 128 S. Ct. 1329 (February 19, 2008). Consistent with this Court's precedent, we conclude that the District Court committed no error in giving this "stream of benefits" instruction.

## C. Money Laundering Convictions

To establish a money laundering offense under 18 U.S.C. § 1956(a)(1), the government must plead and prove: "(1) an actual or attempted financial transaction; (2) involving the proceeds of specified unlawful activity; (3) knowledge that the transaction involves the proceeds of some unlawful activity; and (4) . . . knowledge that the transactions were designed in whole or in part to conceal the nature, location, source,

15

ownership, or control of the proceeds of specified unlawful activity." *United States v. Omoruyi*, 260 F.3d 291, 294-95 (3d Cir. 2001). Chartock makes two separate arguments regarding the insufficiency of the indictment, and they will be addressed separately below.[8] As before, a claim that the indictment failed to properly plead the offense charged is subject to plenary review. *Kemp*, 500 F.3d at 280.

### 1. "Proceeds" Argument

Chartock first argues that the financial transaction alleged in the indictment did not involve the "proceeds" of the specified unlawful activity. Chartock notes that the money laundering counts, Counts 18 and 19, explicitly state that the "proceeds" for purposes of the statute were from the unlawful activities charged in Counts 3 and 4 of the indictment, respectively. Chartock also notes that Counts 3 and 4 are based upon the mailings of the checks from the third parties to Mariano's credit card companies. Chartock argues that because the mail fraud offenses are not complete until the mailings occur, and because the financial transactions constituting the "laundering" alleged in the indictment occurred before the mailings, the indictment failed to properly plead that the financial transactions involved "the proceeds of specified unlawful activity." *See* 18 U.S.C. § 1956(a)(1).

This Court has stated that "for money to become 'proceeds' it must be derived from a completed offense, or *a completed phase of an ongoing offense*." *Omoruyi*, 260

---

[8] Chartock additionally argues that the evidence was insufficient because of the failures of the indictment and that the jury instructions repeated the errors made in the indictment. Because this Court concludes that the indictment properly charged the money laundering offenses, this Court need not reach these related arguments.

F.3d at 295 (emphasis added); *see also United States v. Conley*, 37 F.3d 970, 980 (3d Cir. 1994). A mail fraud offense is not completed until the mails are used, and thus the indictment in this case is only legally sufficient if the financial transactions alleged in the indictment were performed with the proceeds of a "completed phase of an ongoing offense." *Omoruyi*, 260 F.3d at 295-96. Chartock cites to two cases for the proposition that mail fraud is not an "ongoing offense," but these cases both involved the question of which Sentencing Guidelines Manual should be used based on a mail fraud conviction that occurred on a date prior to the change in a particular sentencing guideline, and thus these cases are not controlling. *See United States v. Needle*, 72 F.3d 1104, 1108 n.2 (3d Cir. 1995); *United States v. Seligsohn*, 981 F.2d 1418, 1424-25 (3d Cir. 1992).

In this case, the initial writing of the check and the presentation of the check to Mariano constituted the "completed phase" of the ongoing offense of honest services mail fraud. Chartock argues that because the indictment charged a specific count of honest services mail fraud, and not an ongoing mail fraud scheme, the indictment did not plead an ongoing offense. However, mail fraud, by its statutory definition and as interpreted by this Court, includes the element of Chartock's "knowing and willful participation in a *scheme* or artifice to defraud."[9] *Antico*, 275 F.3d at 261 (emphasis added). Although the offense of mail fraud is not complete until the use of the mails in furtherance of the scheme or artifice to defraud, the scheme is often in place and actions are often taken in

---

[9] Additionally, Counts 18 and 19 incorporate many of the paragraphs from the conspiracy to commit honest services fraud charged in Count 1. *App.* at 132, 134.

furtherance of the scheme prior to the use of the mails that gives rise to federal

jurisdiction under 18 U.S.C. § 1341. *See United States v. Massey*, 48 F.3d 1560, 1566

(10th Cir. 1995) ("'[S]cheme to defraud' has a larger meaning than an individual act of

fraud."); *see also United States v. Santos*, 128 S. Ct. 2020, 2043 (2008) (Alito, J.,

dissenting) ("[T]he unlawful activity in mail fraud . . . is the scheme to defraud, not the

individual mailings carried out in furtherance of the scheme."). Because the scheme to

defraud was at a "completed phase of an ongoing offense" prior to the specific financial

transactions charged in Counts 18 and 19, the indictment properly charged money

laundering.

### 2. *"Financial Transaction" Argument*

Chartock also argues that Count 19 is flawed in a separate manner because of its

inclusion of "the writing of a personal check" as one of the "transactions" coming under

the money laundering statute. Under 18 U.S.C. § 1956, money laundering must involve a

"financial transaction," which is a "transaction" (as defined in 18 U.S.C. § 1956(c)(3))

that meets the requirements of § 1956(c)(4).[10] The term "transaction" is defined to

include a "purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition." 18

U.S.C. § 1956(c)(3). The definition of "transaction" under the money laundering statute

is "very broad" and for that reason at least one Court of Appeals has stated that "[w]riting

a check drawn on an account maintained [in a financial institution the activities of which

---

[10] Chartock does not contest whether the other requirements of 18 U.S.C. § 1956(c)(4) were met.

affect interstate commerce] is . . . a 'transaction.'" *United States v. Jackson*, 935 F.2d 832, 841 (7th Cir. 1991). This Court agrees that the term "transaction" includes the writing of a check, and therefore the indictment properly charged the offense of money laundering in Count 19.

### D. "On or About" Instruction

Chartock finally argues that the District Court's refusal to instruct the jury that the government had to prove that an overt act was committed on the specific date charged in the indictment prejudiced Chartock's defense. The District Court instructed the jury on the meaning of the phrase "on or about," as used in the indictment, as follows: "[T]he proof need not establish with certainty the exact date of any alleged offense. It is sufficient if the evidence in the case established beyond a reasonable doubt that an offense was committed on a date reasonably near the date alleged." *App.* at 1693. Chartock argues that this instruction was prejudicial to his defense because with respect to the second payment, Chartock introduced evidence that called into question Maggie Greer's testimony regarding the dates of the events comprising the second payment.

As stated previously, this Court must exercise plenary review in determining "'whether the jury instructions stated the proper legal standard.'" *Leahy*, 445 F.3d at 642 (quoting *Coyle*, 63 F.3d at 1245). This Court reviews the refusal to give a requested instruction for abuse of discretion. *Id.* at 643. Chartock concedes that generally the government only needs to prove that an overt act occurred "on or about" a certain date. However, Chartock argues that this Court has developed a line of cases creating an

19

exception to this general rule whenever the exact date has unique importance in that case. *See, e.g.*, *United States v. Akande*, 200 F.3d 136, 141-42 (3d Cir. 1999) (remanding on basis that "on or about" cannot be used to extend commencement date of conspiracy backwards to add to restitution); *United States v. Frankenberry*, 696 F.2d 239, 245 (3d Cir. 1982) (holding that "on or about" cannot be used where variation from date specified in indictment would affect whether two counts are multiplicitous). These cases cited by Chartock have no applicability in this situation, where Chartock was simply trying to undermine the credibility of a witness, and where neither the jury instructions nor the District Court prevented Chartock from making such an argument.

Because the "on or about" instruction was legally correct and because the District Court did not abuse its discretion in refusing to give an alternative instruction, this Court concludes that the District Court committed no error in giving the "on or about" instruction.

## IV.

We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary. For the above reasons, the conviction and sentence of the District Court will be affirmed.